# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WANDA SMITH BATTLE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 19-682 (RMC) |
| DISTRICT OF COLUMBIA DEPARTMENT OF TRANSPORTATION, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Defendants District of Columbia, District of Columbia Department of Transportation, Jeff Marootian, and Soumaya Dey move to dismiss, or in the alternative, for summary judgment on Wanda Smith Battle's claims of race and sex discrimination under Title VII of the Civil Rights Act. The Court will grant Defendants' motion to dismiss in its entirety.

## I.    FACTS

The Court takes its facts from the Amended Complaint and Defendants' Statement of Undisputed Material Facts, which are not contested by the Plaintiff.

Wanda Smith Battle is an African-American female employed by the District of Columbia Department of Transportation (DC DOT). She works in the Traffic Operations and Safety Division of DC DOT, where she serves as a Program Management Analyst. Ms. Battle's direct supervisor is James Strange, and her second-level supervisor is Soumaya Dey.

In June 2018, Ms. Battle submitted a request to attend two seminars, which her direct supervisor, Mr. Strange, approved. However, Mr. Dey approved only one of the two seminars, denying her request to attend the Traffic Flow Theory and Characteristics Committee

1

Workshop and Midyear Meeting in Woods Hole, MA in August 2018. Up to that time, Ms. Battle and Mr. Dey had had very little contact but Ms. Battle went directly to him to ask about her request to attend the program in Woods Hole. Mr. Dey told her that he had not approved the request because the program would be attended by engineers and professors and she would not "comprehend" it. Am Compl. [Dkt. 9] ¶ 22. Ms. Battle alleges that Mr. Dey also made derogatory statements concerning her experience and intelligence.[1] Ms. Battle informed Mr. Dey that she holds a "double master's degree" but he "still seemed unsure" and "would have to think about it." Mot., Ex. 7, Pl.'s EEO Charge of Discrimination [Dkt. 10-9]. Ms. Battle considered Mr. Dey's comments to be discriminatory.

She did, nonetheless, attend the workshop. She appealed Mr. Dey's denial to his superior, an unnamed individual, who approved it. Ms. Battle was informed that she could attend the Committee Workshop and Midyear Meeting on July 27, 2018. She registered for the program on July 30, 2018 and attended the meeting from August 7 to August 9, 2018.

In her position as a Program Management Analyst, Ms. Battle was responsible for bringing the department into compliance and she completed that task. *See* Am. Compl. ¶ 28. But before she received credit for this work, she was transferred to another position where she was again assigned responsibility for turning around another non-compliant program; she complains that an employee "with less credential and experience" replaced her in the original position. *Id*. ¶ 31. Ms. Battle asked Jeff Marootian, another employee at DC DOT, whether she would receive a promotion for her work in the original position and he responded "you wanna

---

[1] Ms. Battle further alleges that Mr. Dey has engaged in racist conduct toward African-American employees.

2

stay here don't you," which Ms. Battle interpreted to mean she should not complain for fear of losing her job. *Id*. ¶¶ 35-36.

On November 28, 2018, Ms. Battle filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Since that charge is at the heart of the dispute, the Court quotes it in whole:

> I have been employed with the [DC DOT] since July of 2017 as a program management analyst. My supervisor, James Strange, approved two training seminars relevant to my job in July of 2018, which were then passed up to the Assistant Director, Soumya [sic] Dey. I noticed that he only approved one out of the two trainings, so I went to him to bring it to his attention. Mr. Dey and I have near to no interaction before this date, and when I went to him this was our first real conversation. When I went into his office and mentioned that he didn't approve the second training, he explained that he didn't think I would be able to comprehend the information in the training because everyone there would be an engineer or professor, and I didn't have the qualifications for that. Once I explained that I actually had a double master's degree, he still seemed unsure and told me he would have to think about it. The training was never approved.
>
> I believe I have been discriminated against based on my race (Black/African American), and my sex (female), in violation of Title VII of the Civil Rights Act of 1964, as well as my age, in violation of the Age Discrimination in Employment Act of 1967, as amended.

Pl.'s EEO Charge of Discrimination.

Ms. Battle alleged discrimination due to her race, sex, and age. *Id.* The EEOC dismissed her charge on December 11, 2018 and issued a Right to Sue Letter to Ms. Battle, who filed a Complaint on March 11, 2019 and followed it with an Amended Complaint on June 14, 2019. Ms. Battle sues the District of Columbia Department of Transportation, Jeff Marootian, Soumaya Dey, and the District of Columbia under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. She also names two additional civil rights laws, 42 U.S.C. §§ 1981 and 1983. The Amended Complaint alleges that Ms. Battle suffered discrimination due

3

to her race, African American, and gender, female. Defendants move to dismiss or, in the alternative, for summary judgment. The motion is ripe for review.[2]

## II. LEGAL STANDARDS

### A. Motion to Dismiss/Summary Judgment

Motions to dismiss are properly raised in response to a complaint under Federal Rule of Civil Procedure 12. Fed. R. Civ. P 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible when it pleads facts that allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the standard is deferential, it "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, and is unsatisfied when a complaint pleads facts that are "'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557). While courts considering Rule 12(b)(6) motions accept as true the factual allegations in a complaint, they are not forced to accept the plaintiff's conclusory legal determinations. *See id*.

Alternatively, motions for summary judgment should be granted when the moving party demonstrates that there is no genuine dispute of a material fact. Fed. R. Civ. P. 56(a). A party can move for summary judgment at any time before thirty days after the close of discovery. Fed. R. Civ. P. 56(b). The moving party has the burden of proving that there is no material dispute of fact, and under our Local Rules can do so by providing a list of material facts not in

---

[2] *See* Defs.' Mot. to Dismiss or in the Alternative for Summ. J. (Mot.) [Dkt. 10]; Pl.'s Resp. in Opp'n to the Defs.' Mot. to Dismiss or in the Alternative for Summ. J. (Opp'n) [Dkt. 13]; Defs.' Reply to Pl.'s Opp'n to the District's Mot. to Dismiss or in the Alternative for Summ. J. [Dkt. 14].

dispute which are to be taken as true unless controverted by the nonmoving party in their opposition filing. LCvR 7(h)(1). Once such facts are established, courts rely on them to determine whether the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[W]here a defendant has moved for summary judgment under Rule 56 as an alternative to dismissal under Rule 12(b)(6), 'the decision regarding whether or not to treat motion to dismiss as one for summary judgment is committed to the sound discretion of the trial court.'" *Tyson v. Brennan*, 306 F. Supp. 3d 365, 369-70 (D.D.C. 2017) (quoting *Ross v. U.S. Capitol Police*, 195 F. Supp. 3d 180, 192 (D.D.C. 2016)).

### B. Title VII

In order to bring an actionable discrimination claim under Title VII, a plaintiff must establish that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the adverse action gives rise to an inference of discrimination. *See Edwards v. Gray*, 7 F. Supp. 3d 111, 115 (D.D.C. 2013); *see also Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002); *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 174 (D.D.C. 2012). "[A]n employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). A plaintiff must, however, plead sufficient facts to demonstrate a plausible right to relief. *Jones v. Castro*, 168 F. Supp. 3d 169, 184 (D.D.C. 2016).

Title VII prohibits discrimination in the workplace because of an individual's race, color, sex, religion, or national origin. 42 U.S.C. § 2000e-16. "Under Title VII . . . , the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, [or] national origin." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). A plaintiff can prove her case

with either direct or circumstantial evidence. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

If a plaintiff cannot provide direct evidence of discrimination, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework: (1) the plaintiff must establish a prima facie case demonstrating that she was subjected to an adverse employment action under circumstances that support an inference of discrimination; (2) the defendant may then come forward with a legitimate, non-discriminatory reason for its actions; if the defendant does so, (3) the plaintiff must demonstrate that such legitimate, non-discriminatory reasons were pretextual justifications to hide discrimination. *See Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003). Once an employer asserts a legitimate, non-discriminatory reason for the action(s) taken, the need to analyze the *prima facie* case drops away and "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

C. **Jurisdiction and Venue**

Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Federal district courts have original jurisdiction to review claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, pursuant to 28 U.S.C. § 1331 because Title VII cases are actions arising under federal law.

Venue is appropriate in this district under 28 U.S.C. § 1391(b) because the Defendants are the District of Columbia, DC DOT, and DC DOT employees and Ms. Battle is

6

employed by the District in the District. 28 U.S.C. § 1391(b). Defendants do not contest jurisdiction or venue.

## III. ANALYSIS

Some aspects of the Amended Complaint face hurdles that cannot be overcome: certain named Defendants are not subject to suit and not all remedies are available. The Court addresses these matters briefly before turning to the substantive issues.

### A. Wrongly-Named Defendants

Ms. Battle is an employee of the DC DOT. As defendants, she names not only the District of Columbia, but also the DC DOT, Jeff Marootian, a DC DOT employee, and Soumaya Dey, a DC DOT supervisor. The proper defendant in an employment discrimination action for money damages brought by a D.C. employee is the District of Columbia itself. *See Cooper v. Henderson*, 174 F. Supp. 3d 193, 199 (D.D.C. 2016) (citing *Smith v. Janey*, 664 F. Supp. 2d 1, 8 (D.D.C. 2009) ("[T]here is no individual liability under Title VII, the ADEA or the ADA.")). Additionally, District of Columbia agencies, such as DC DOT, have been found *non sui juris*, or not suable entities separate from the District. *See Gurara v. District of Columbia*, 881 F. Supp. 2d 143, 145 n.1 (D.D.C. 2012) ("The complaint also names the District of Columbia's Department of Transportation, which is *non sui juris* and may not be sued."). The proper defendant in this action is the District of Columbia and all other named Defendants will be dismissed.

### B. Wrongly-Sought Remedy

Ms. Battle's Amended Complaint requests punitive damages as part of her remedy. As stated above, the only proper defendant is the District of Columbia itself and D.C. is not liable for punitive damages absent extraordinary circumstance. *See Daskalea v. District of Columbia*, 227 F.3d 433, 446-47 (D.C. Cir. 2000) (quoting *Smith v. District of Columbia*, 336

A.2d 831, 832 (D.C. 1975) ("Absent extraordinary circumstances not present here, we agree with the weight of authority and conclude the District of Columbia is not liable for punitive damages.")). Ms. Battle argues that extraordinary circumstances exist because she "has been subjected to discriminatory conduct by her superiors regarding the intellectual capacity of her and other African American employees" and DC DOT "failed to protect [Ms. Battle] from these occurrences and provided minimal responses to [her] complaint." Opp'n at 3. The argument is insufficient and without legal support. The allegations in the Amended Complaint do not state extraordinary circumstances that could justify punitive damages. The claim for punitive damages will be dismissed.

C. **Wrongly-Cited Statutes**

The Amended Complaint makes a single reference to §§ 1981 and 1983, 42 U.S.C. §§ 1981 & 1983, but does not specify claims under either statute. Its two claims explicitly state they are raised under Title VII. This is probably not a mistake: Section 1981 assures equal rights under the law and protects against "nongovernmental discrimination," 42 U.S.C. § 1981(c), while Section 1983 provides a cause of action for individual liability when a deprivation of rights occurs. Since the Amended Complaint only identifies these laws but does not make allegations concerning them, it fails to state a relevant claim to relief that is plausible on its face. Any potential claims under §§ 1981 and 1983 will be dismissed.

D. **Exhaustion of Administrative Remedies**

Ms. Battle's opposition to D.C.'s motion identifies the issues she wishes to litigate in addition to Mr. Dey's reaction to her training request and treatment of it. She argues that she has alleged sufficient facts to sustain a claim of a hostile work environment, that she was treated discriminatorily when she was transferred to another comparable position, and that she was intimidated into accepting the job. These events were allegedly based on her race because

8

Messrs. Dey and Marootian did not treat white employees in the same fashion. The District of Columbia states that none of these matters was raised in Ms. Battle's EEO charge and none is like or related to the denial of training of which she did complain.

Before filing suit in a district court, an individual raising a Title VII claim must complete the administrative exhaustion requirements, s*ee Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 (2002), which includes filing a charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1). Because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" *Nat'l R.R.*, 536 U.S. at 114, "plaintiffs alleging discrete acts of discrimination or retaliation 'must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others.'" *Rashad v. Washington Metro. Area Transit Auth.*, 945 F. Supp. 2d 152, 166 (D.D.C. 2013) (quoting *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137-38 (D.D.C. 2004)).

Ms. Battle did file a charge with the EEOC and in that charge she alleged that Mr. Dey discriminated against her due to her race, gender, and age when he denied one of two requests to attend training. Although the Amended Complaint and her opposition include allegations about derogatory comments, *see* Am. Compl. ¶ 23, and Ms. Battle's reassignment to another department, *see id*. ¶¶ 28-36, her EEO charge made no allusion to, and included no information concerning, those allegations.

Ms. Battle attempts to rehabilitate part of her additional discrimination claims by arguing they are reasonably related to the claim she included in her EEO charge. *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) ("A Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the

charge and growing out of such allegations." (internal quotation marks and citation omitted)). She contends that three paragraphs in her Amended Complaint were reasonably related to the EEO charge. Opp'n at 4 (citing Am. Compl. ¶¶ 22-24). Paragraph 22 alleges that Mr. Dey believed Ms. Battle lacked the ability to comprehend the training, which statement is explicitly included in Ms. Battle's EEO charge; Paragraph 23 alleges that Mr. Dey referred to African-American students as "those people"; and Paragraph 24 alleges that "[Mr.] Dey's racist conduct was only committed toward African-American employees and potential employees." Am. Compl. ¶¶ 22-24. No further background, examples, or facts elucidate these allegations. On the other hand, Ms. Battle's EEO charge was specific and focused on her dual training requests. There is no relationship shown between the training and other alleged unidentified instances of racism that would connect them. The single comment about "those people" might be offensive but is not alleged with facts that indicate a pattern; most single comments are not independently violative of Title VII. *See Simms v. Gen. Printing Office*, 87 F. Supp. 2d 7, 9 (D.D.C. 2000) ("'[S]tray remarks,' even those made by a supervisor, are insufficient to create a triable issue of discrimination where . . . they are unrelated to an employment decision involving the plaintiff."). Ms. Battle's conclusory statement that Mr. Dey's racist conduct was targeted at African Americans both lacks facts and a relationship to the denial of a training opportunity.

Ms. Battle has only exhausted her administrative remedies with respect to her discrimination claims based on the denial of training opportunities by Mr. Dey. All other claims will be dismissed for failure to exhaust.

### E. Claim Regarding Unapproved Training

The only remaining claim is Ms. Battle's claim that Mr. Dey discriminated against her due to her race and/or gender when he denied her request to attend the Traffic Flow

10

Theory and Characteristics Committee Workshop and Midyear Meeting in Woods Hole, MA in August 2018.

The District first asks the Court to dismiss this remaining claim because the denial of a training opportunity did not constitute an adverse employment action. An "adverse employment action" is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011) (quoting *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)). An adverse employment action occurs if an employee "experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002).

A denial of a training opportunity can be an adverse employment action, *see Freedman v. MCI Telecomms. Corp.*, 255 F.3d 840, 845 (D.C. Cir. 2001), but the denial must "materially affect[] the plaintiff's pay, hours, job title, responsibilities, promotional opportunities, and the like." *Santa Cruz v. Snow*, 402 F. Supp. 2d 113, 127 (D.D.C. 2005); *see also Casey v. Mabus*, 878 F. Supp. 2d 175, 184 (D.D.C. 2012) (finding plaintiff's allegations regarding denial of training "insufficient to establish an adverse employment action" and citing additional cases); *Edwards v. EPA*, 456 F. Supp. 2d 72, 86 (D.D.C. 2006) ("[T]o be adverse, the denial of a travel or training opportunity must have a discernible, as opposed to a speculative, effect on the terms, conditions, or privileges of one's employment.").

The Amended Complaint does not present allegations concerning the effect of the denial of training on Plaintiff's employment. While she argues that "[Mr.] Dey's denial of [her]

11

opportunity to attend the training session stunts [her] ability to be promoted within the agency," Opp'n at 4, Plaintiff offers no facts in support.

This lack of a factual underpinning may be understandable: although Mr. Dey initially denied her second training request, it was timely approved, and Plaintiff attended the training in Woods Hole after all. The duration of Mr. Dey's denial was no more than a month and, without much more, could not have affected Plaintiff's career as she contends.[3] Ms. Battle's claims of discrimination due to the unapproved training opportunity will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss, Dkt. 10. A memorializing Order accompanies this Memorandum Opinion.

Date: January 29, 2020

ROSEMARY M. COLLYER
United States District Judge

---

[3] The District moved, in the alternative, for summary judgment and included evidence that Ms. Battle ultimately attended the training that was originally not approved. Ms. Battle does not contest the fact that she attended the training. Therefore, even if her inability to attend the training could have resulted in a discernible effect on her employment, no such effect ever occurred because she does not dispute that she attended the training.